INTERNATIONAL FORWARDING CO., INC. *v.* UNITED STATES

**No. 5198.**—Invoice dated Reutlingen, Germany, April 15, 1939.
Certified April 19, 1939.
Entered at New York May 4, 1939.
Entry No. 840660.

## Third Division, Appellate Term

(Decided April 7, 1941)

*B. A. Levett* for the appellant.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellee.

Before CLINE, EVANS, and KEEFE, Judges

KEEFE, Judge: This is an application for review of the finding of the trial court, sitting in reappraisement, involving the United States value of certain paper tubes imported from Germany. The paper tubes were entered and appraised upon the basis of the United States value and it is conceded by the parties hereto that such is the proper basis of appraisal. Among the statutory charges deducted from the United States selling price by the importer in order to obtain the United States value was 8 per centum for profit. The appraiser disallowed the deduction for profit on the theory that no profit was made by the importer. The importer contends that the paper tubes were purchased with reichsmarks acquired through the purchase in the United States of certain cotton and copper which were shipped to Germany and there sold at a profit; that it was all one transaction resulting in enabling the importer to profit thereby to more than 10 per centum; and that such profit derived is properly deductible in determining the dutiable United States value.

At the trial below the sole evidence was produced through the testimony of W. E. Mayer, treasurer of the Adolff Bobbin Co., Inc.,

the importer of the paper tubes in question, and is substantially as follows: The importer has been purchasing this class of merchandise in Germany and receiving weekly shipments for several years; that orders are placed at the factory in Germany for the paper tubes at fixed prices; that during the year 1938 the importer began the purchase of copper and cotton in the American market for shipment to Germany, where the American products were sold at a profit of 30 per centum or more; that the proceeds thereof were placed to his credit in German banks, and with the same the German manufacturer of the paper tubes was paid; that through the cotton and copper transactions the importer was able to obtain reichsmarks which cost him from 26 cents to 30 cents rather than 40 cents, the regular exchange rate, and therefore more paper tubes in terms of dollars could be purchased than if the dollar was exchanged for reichsmarks at the prevailing rate of exchange. Upon importation into the United States the paper tubes were sold without profit accruing to the importer. In other words, the United States selling price, less deductions of 8 per centum for overhead, less freight and shipping charges, less insurance and less the specific and ad valorem duties was equal to the price paid for the merchandise, without any allowance for profit.

It was further disclosed that the importer is not in the business of buying and selling copper and cotton and such transactions are instituted through agents in the United States and in Germany. When the importer needs copper and cotton credits in Germany the importer would ask the Continental Export and Import Corporation to purchase the required amount of cotton and copper and the cost thereof would be deposited with the J. H. Schroeder Banking Corporation. The cotton and copper would be sold in Germany by agents and the proceeds deposited in a German bank to the credit of the importer. The copper and cotton transactions were usually started after the paper tubes had been ordered from Germany, sometimes before the arrival thereof in the United States and at times after the paper tubes had arrived in this country. The importer never actually handled the copper or cotton and the transactions were entirely handled through agents here and in Germany. So far as the importer was concerned it was merely a bookkeeping transaction, being entered in his books as a purchase and sale, at a profit to the importer of from 25 to 35 per centum, and that profit was the result of obtaining reichsmarks at 30 cents rather than at 40 cents, the exchange rate.

The trial court held that a deduction of profit was only allowable when it is established that such profit was made upon the sale of such or similar merchandise in the United States and that a profit made upon the sale of cotton and copper in Germany was entirely irrelevant to the issue, and in such circumstances the United States

value as determined by the appraiser was the value of the merchandise.

Upon appeal counsel for the importer insists that the purchase of cotton and copper and the sale thereof in Germany together with the purchase of the paper tubes is one transaction and that the Treasury Department so recognized it in T. D. 49821 when holding that merchandise purchased through the system heretofore stated was subject to a bounty under section 303, and that if all of these transactions resulting in the acquisition of the paper tubes are not held to be one transaction there could be no ground upon which a countervailing duty could be levied under section 303.

Counsel for the Government contends that only the interpretation of section 402 (e) is involved in the reappraisement before us and the provisions of section 303 of the Tariff Act relating to countervailing duties are not a part of this case; that under section 402 (e) is provided an allowance for profit realized in the sale in the United States of such or similar merchandise, which would exclude an item of profit realized upon the sale in Germany of an entirely different product.

From a careful consideration of the record and from statements and admissions of counsel for the importer, a profit of 25 per centum or more was made upon the purported sale of an American commodity in Germany, with which proceeds German goods were purchased for shipment to the United States, which, upon arrival, were sold in the United States without any profit. Clearly, if a bona fide transaction such as the importer has attempted to prove did exist, there were two transactions. Consequently, if the importer sold goods such as here imported without profit, he is not entitled to any profit deduction in determining the statutory charges allowable from the United States selling price in establishing the dutiable United States value. Only the profits ordinarily realized in the sale of "such or similar imported merchandise," which have been held to be prototype merchandise, are allowed as deductions from the United States selling price. See *United States* v. *American Aniline Products, Inc.*, 22 C. C. P. A. 380, T. D. 47399. We agree with counsel for the Government that the provisions of section 303 of the Tariff Act of 1930, relative to countervailing duties, are not before us in this case.

For the reasons stated, we find no error in the decision and judgment of the trial court holding that the appraised United States value of the merchandise represents the dutiable value thereof.

Judgment will therefore be entered affirming the judgment of the trial court.